UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:05CV-44-R

TREK BICYCLE CORPORATION and
GERLING AMERICA INSURANCE COMPANY                                    PLAINTIFFS
v.

MITSUI SUMITOMO INSURANCE CO., LTD                                    DEFENDANT

**MEMORANDUM OPINION**

Defendant Mitsui Sumitomo Insurance Co., Ltd. ("MSI"), has moved for summary judgment (Dkt. # 13). Plaintiffs Trek Bicycle Corporation and Gerling American Insurance Company (collectively "Trek") responded (Dkt. # 16), and MSI replied (Dkt. # 17). Plaintiffs also filed a separate motion for summary judgment (Dkt. # 15), to which MSI responded (Dkt. # 17), and these matters are now ripe for decision. For the reasons given below, MSI's motion for summary judgment will be **GRANTED**, and Trek's will be **DENIED**. The case will be **DISMISSED**.

**BACKGROUND**

Plaintiffs Trek and Gerling seek contribution from MSI for a $975,000 settlement Plaintiffs paid in a Kentucky state-court lawsuit over a bicycle sold by Trek. The underlying lawsuit was brought on behalf of Emery Pardue, who was injured while riding a recently-purchased Trek bicycle. The complaint in that lawsuit alleged that the injury occurred because the brakes on the bicycle were more sensitive than was appropriate for the bicycle, and that this caused the bicycle to stop abruptly, which in turn caused Emery Pardue to fall off and sustain injuries. Eventually, Trek settled the lawsuit and it now seeks a 50% contribution from MSI, which provided an insurance policy to two companies, Dia-Compe Taiwan Co., Ltd. ("Dia-

Compe") and Diatech USA, Inc. ("Diatech"), which supplied a component of the brakes used on the bicycle in question to Trek. Under that policy, Trek was listed as an additional insured under a "vendor's endorsement" provision, which provides limited coverage to vendors of Dia-Compe's or Diatech's products. It is under this provision that Trek seeks contribution.

MSI rests its motion for summary judgment on two grounds: one, that Trek failed timely to notify it of the claim; and two, that the provision's coverage does not extend to vendors where there is no causal link between Dia-Compe's or Diatech's product and the injury. Trek and Gerling dispute each of these assertions, and in their own summary judgment motion argue that there is no issue of material fact regarding their entitlement to contribution from MSI.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of

fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

**Trek's Failure Timely to Notify**

MSI argues that, in the context of the insurance contract at issue in this case, Trek's failure to report the claim to MSI in a timely manner prevents it from now seeking contribution from MSI. Trek argues that MSI is required by Kentucky law to demonstrate that it was prejudiced by Trek's delay in reporting the claim. Both parties correctly note that in *Jones v. Bituminous Cas. Corp.* the Kentucky Supreme Court adopted the so-called "notice-prejudice" rule which imposes on insurance providers seeking to avoid coverage due to insufficient notice the burden of demonstrating that they were prejudiced thereby. 821 S.W.2d 798 (Ky. 1991). MSI argues, however, that *Jones* is inapposite because it was decided in the context of a different type of insurance policy than the one at issue here. The policy issued by MSI is a "claims-made" policy, meaning it provides coverage for any claim made against the insured during a certain

3

period, regardless of when the incident giving rise to the claim actually occurred. The policy says that: "[c]overage hereunder shall apply only in respect of claim(s) made against any Insured during the policy period of this insurance stated in the Declaration ... and of which immediate notice has been given in accordance with the Conditions herein..." (Exh. 1 to Dkt. # 13 at 7). The policy period in question was from November 20, 2000 to November 20, 2001. (*Id.* at 5). This is distinguished from an "occurrence" policy, which provides coverage for incidents that *occur* during the specified period, regardless of when the claim is made. MSI argues that the distinction between these two types of policies dictates that the notice-prejudice rule should not apply to this case, and that Trek's failure to notify MSI of the claim until February of 2003 (which is both not "immediate" and outside the policy period) is fatal to its claim for contribution.

No case in Kentucky has addressed the application of the notice-prejudice rule to a claims-made policy. However, the majority rule in other jurisdictions that have addressed the issue appears to be that, under a claims-made policy, failure to notify within the specified time period will defeat coverage. *See, e.g. Gulf Ins. Co. v. Dolan Fertig & Curtis*, 433 So.2d 512 (Fla. 1983); *see also U.S. v. A.C. Strip*, 868 F.2d 181 (6th Cir. 1989) (applying Ohio law). In so holding, courts have based this determination on reasoning like the following:

> With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period, as the district court proposes, negates the inherent difference between the two contract types. Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made or discovery policies are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches. If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an extension of coverage to the insured gratis, something for which the insurer has not bargained. This extension of

> coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties. This we cannot and will not do.

433 So.2d 512, 515-516. The Court finds this reasoning persuasive and belives that Kentucky courts would as well. As noted by the case law, claims made policies are different. At the end of the policy period the insurer and insured know thier risk and exposure. The claims must be made within the policy period and under the policy the insurer must be given immediate notice. The Pardue suit was filed April 10, 2001. Trek filed an answer May 5, 2001. Almost two years later, in February of 2003, Trek tendered the defense to MSI demanding coverage under the vendors endorsement. Certainly this notice was not immediate.

    The insured was not notified within the policy period nor immediately after Trek knew a claim had been made against it. To allow coverage under these circumstances simply rewrites the policy. It allows the insured to avoid the reasoning behind a claims made policy. Claims first made known to the insurer well over two years after they are made and over one year after the policy period expires simply are not covered. The advantage of a claims made policy is that the insurer and the insured know their exposure at a fairly certain time. Consequently the insurer is better able to predict the limits of the exposure and more accurately to estimate the premium schedule necessary to accommodate the risk undertaken.

    Therefore, MSI is entitled to summary judgment on Trek's claim on the basis of Trek's failure to satisfy the policy's notice provisions.

**Causation and the Vendor's Endorsement**

    MSI alternatively argues that, even if the policy were enforceable despite Trek's failure to notify, the scope of the coverage contemplated in the agreement does not include the

contribution sought in this case. MSI argues essentially that coverage under the policy is limited by a causation requirement; that is, that the vendor's endorsement does not apply where the injury was caused by the vendor, not by a failure of MSI's product. "Such an endorsement covers the vendors' liability arising out of their role in passing the manufacturer's product on to customers, but does not cover vendors for their own negligence. Coverage under the vendor's endorsement is limited to injuries arising out of a defect in the manufacturer's product." 9A Lee R. Russ & Thomas F. Segalia, *Crouch on Insurance* § 130:3 (3d ed. 1997).

As both parties observe, Kentucky courts do not appear to have spoken on the issue of whether Kentucky law would impose such a requirement. MSI discusses cases from several other jurisdictions that have adopted such a rule; because a nexus requirement would comport with Kentucky's substantive products liability law, the Court believes that Kentucky courts would follow suit.

The parties discuss at length a case from the Superior Court of New Jersey's Appellate Divison with facts similar to the case at bar. *Sears Roebuck & Co. v. National Union Fire Ins. Co. of Pittsburgh, PA,* 774 A.2d 526 (N.J. Super. Ct. App. Div. 2001). In that case, the court held "that, absent facts showing a substantial nexus between the product and the occurrence of the accident, the insurers' obligation to defend, pursuant to its vendor's endorsement, ceases at the point in time when there is a legal determination that precludes the underlying products liability claim." *Id.* at 529. A similar nexus requirement is imposed under California law. *SDR Co. Inc. v. Federal Insurance Co.*, 242 Cal. Rptr. 534 (Cal Ct. App. 1987); *Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 280 F.3d 744 (7th Cir. 2002). The issue, then, is whether Kentucky insurance law would support the imposition of a nexus requirement when construing

vendors' endorsements.

As a matter of substantive products liability law, Kentucky courts have limited a manufacturer's liability in situations where its products, which were not in and of themselves defective, were incorporated into larger products which were ultimately defective in some way. In *Worldwide Equipment, Inc. v. Mullins*, the Kentucky Court of Appeals reviewed a jury verdict against a number of companies involved in producing a coal dump truck that was involved in an accident with the plaintiff's pickup truck. 11 S.W.3d 50 (Ky. Ct. App. 1999). Plaintiffs were injured when their pickup slid underrode the dump truck, causing the dump truck to break through the windshield of the pickup. The theory of the plaintiffs' case (in addition to claiming that the driver of the dump truck negligently failed to use his turn signal) was that their injuries were worsened by a negligent failure to attach a rear underride bumper to the dump truck that would have prevented Plaintiffs' pickup from sliding under the rear of the dump truck. Mack Trucks, Inc. ("Mack"), the company that manufactured the cab-chassis that was used as a component of the dump truck, sought a judgment notwithstanding the verdict on its liability as imposed by the jury. The trial court denied the motion, but the Court of Appeals held that it should have been granted on the basis of what it called the "component parts doctrine" as well as the Sixth Circuit Court of Appeals's holding in *Childress v. Gresen Mfg. Co.*, 888 F.2d 45 (6th Cir. 1989).

In so holding, the Court of Appeals adopted reasoning from a similar case, *Field v. Omaha Standard, Inc.*, 582 F.Supp. 323 (E.D.Pa. 1983), noting that Mack was not involved with the final manufacture of the truck, only that of the cab-chassis, which was "nothing more than a component of the finished product;" that the cab-chassis "was a multi-purpose unit which could

have been utilized as one of hundreds of various body configurations;" and that "[c]ustom in the cab-chassis industry was for the final-stage manufacturer to install an underride guard, if necessary." 11 S.W.3d 50, 56. Further, the Court of Appeals said, "...in light of the abundant number of possible vehicles the cab-chassis could ultimately become, we believe ... that to expect, much less require, Mack to monitor a cab-chassis throughout its useful life imposes too great a burden on the manufacturer." *Id.* at 57. Additionally, the Court of Appeals said:

> [a]lthough addressing a situation where the owner of a product failed to maintain same in such a manner as to permit the product's integrity to remain intact, we glean the following precept, as pronounced by our Supreme Court, to be instructive: There is a limit beyond which the manufacturer simply cannot as a practical matter be expected to go. He is entitled, we think, to rely on the owner of the machine to assume the responsibility for keeping it in safe working order. The owner's failure to do so (and to warn the operator accordingly) might constitute superseding negligence if it could be found that the [product] was unreasonably dangerous in the first place...

*Id.*, citing *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 201 (Ky. 1976). The Court of Appeals also relied upon the Sixth Circuit's holding in *Childress*, *supra*, where that court, applying Michigan law, said: "[A] component part supplier has no duty, independent of the completed product manufacturer, to analyze the design of the completed product which incorporates its non-defective component part." 888 F.2d at 49. Ultimately, the *Worldwide* court said:

> [W]e are of the opinion that a manufacturer similarly situated to Mack, in that the manufacturer merely produced a component part ... cannot be held liable under the strict liability theory of failure to warn. Where there is no federal or state statute or regulation imposing such a duty, and where the product in question is found to be neither defective nor unreasonably dangerous, delegating to a manufacturer the task of tracking the final, and subsequent, configurations attached to its principal structure is entirely too great, much more impractical. The bottom line remains the simple fact that the cab-chassis component of the coal truck bore neither impact nor consequence in the cause of the accident underlying this litigation.

11 S.W.3d 57-58.

This precedent indicates that, under the facts of the case at bar, MSI's insured could not have been liable under a strict liability theory absent evidence that the brake levers it manufactured were themselves defective. Indeed, this theory was argued to the trial court in the underlying *Pardue* case, and apparently accepted by it, as evidenced by its dismissing the manufacturers from that case. The reasoning that underlies the nexus requirement urged by MSI follows these same principles. Under Trek's proposed interpretation of the insurance provisions, with no nexus requirement, in the case at bar, the manufacturer of the bike's seat would be equally liable although no evidence indicated that the seat played a role in the accident. Trek alternatively argues that it has demonstrated a nexus between MSI's insureds' product and the injury in this case; however, the fact that the product in question was part of the braking system does not suffice to demonstrate the nexus. According to the trial court's orders dismissing MSI's insureds, there was insufficient evidence to indicate that they could be liable to the plaintiffs; this indicates that the evidence was that the accident was caused by a malfunction or mistake in design that was attributable to Trek, which played no role in the design of the parts sold by MSI's insureds. Therefore, the nexus between the parts in question and the injury suffered by the plaintiffs in the underlying tort action is lacking.

The vendor's endorsement in question was to provide coverage for injuries caused by defects in the brake. The brake lever covered were not defective as designed or manufactured. The bike may have been defective for utilizing this particular type of brakes, but there was no defect in the brakes themselves. The vendor's endorsement does not extend as far as Plaintiff argues. If Plaintiff's argument was accepted, there would be illogical results, including liability

where causation was lacking. The Court believes that Kentucky law would include a causation or nexus requirement in the interpretation of a vendor's endorsement provision like the one in this case. Therefore, the provision does not provide coverage to Trek in this case, and MSI is entitled to summary judgment on Trek's claims for contribution.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order shall issue.